**SEABOCK PRICE APC**
Dennis Price SBN 279082
Christopher A. Seabock SBN 279640
117 E. Colorado Blvd., Ste. 600
Pasadena, California 91105
Phone: 323-616-0490
dennis@seabockprice.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Stacy Holmes**<br>**Lynn Holmes,**<br>     Plaintiffs,<br><br>     v.<br><br>**Segerstrom Center for the Arts,** a California Nonprofit Corporation;<br>**Pacific Symphony,** a California Nonprofit Corporation<br><br>     Defendant(s). | Case Number:<br><br>**Complaint for Damages and Injunctive Relief for Violations of:**<br>Americans with Disabilities Act, Unruh Civil Rights Act, Disabled Persons Act<br><br>Jury Trial Demanded |

Plaintiffs, Stacy Holmes and Lynn Holmes, allege the following upon information and belief based upon investigation of counsel, except as to their own acts, which they allege upon personal knowledge:

## INTRODUCTION

1. This claim arises from policy actions taken by the Pacific Symphony and Segerstrom Center for the Arts against their disabled patrons. The Segerstrom Concert Hall offers seating for disabled patrons on the last row of the Concert Hall. However, through a combination of intentional actions and inactions, Defendants have created an environment hostile to their patrons seated in this row, creating a denial of full and equal enjoyment of the events held at the Concert Hall. This allegation does directly challenge the construction of the building, but a policy and procedure regarding the use of that structure that discriminates against disabled patrons and their companions.

## PARTIES

2. Plaintiffs are, and at all times relevant and as alleged herein, residents of Mission Viejo California, County of Orange.

3. Defendant Segerstrom Center for the Arts owned the real property located at or about 600 Town Center, Costa Mesa, California, 92626, in November 2022.

4. Defendant Segerstrom Center for the Arts owns the real property located at or about 600 Town Center, Costa Mesa, California, 92626 currently.

5. Defendant Pacific Symphony operates symphonies at multiple locations, but is the "resident orchestra" of the Segerstrom Center for the Arts at Renee & Henry Segerstrom Concert Hall and plays numerous shows there throughout the year.

6. Defendant Pacific Symphony owned or operated the place of public accommodation located at or about 600 Town Center, Costa Mesa, California, 92626, in November 2022.

7. Defendant Pacific Symphony owned or operated the place of public accommodation located at or about 600 Town Center, Costa Mesa, California, 92626, on an intermittent and on-going basis.

8. Defendant Pacific Symphony owns or operates the place of public accommodation located at or about 600 Town Center, Costa Mesa, California, 92626 currently.

9. Defendants Pacific Symphony, and Segerstrom Center for the Arts ("Defendants") are jointly responsible for the operation of the Renee & Henry Segerstrom Concert Hall at the Segerstrom Center for the Arts.

10. Every landlord, tenant, owner or operator of a place of public accommodation is separately charged with compliance with the ADA. 28 CFR § 36.201(b). Liability for non-compliance persists regardless of any contractual apportionment of responsibility between them. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833-34 (9th Cir. 2000).

11. At all times relevant to this complaint, Defendants had and continue to have a continuing obligation to assess, identify and remove all accessibly barriers where readily achievable to do so, and to implement the most accessible alternative when full compliance is not readily achievable.

12. Plaintiff does not know the true names of all defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein is responsible in some capacity for the events herein alleged or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants are ascertained.

**JURISDICTION AND VENUE**

13. This court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 1281, *et seq.,* and 28 U.S.C. § 1332.

14. This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

15. This court has personal jurisdiction over Defendant because it conducts and continues to conduct business in the state of California, county of Orange.

16. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complaint4ed of herein occurred in this District.

## FACTUAL ALLEGATIONS

17. Plaintiff, Stacy Holmes suffers from a spinal nervous system condition, intradural melanotic schwannoma, as well as a spinal injury related to treatment of that condition. He uses a variety of assistive devices to assist him with mobility. His disability causes him to have virtually no proprioception in his lower body (the ability to perceive the location of your body in space), which creates difficulty in his ability to be aware of where his legs are located as a result of on-going spasms. He is a member of a protected class of individuals guaranteed rights under state and federal law.

18. Plaintiff, Lynn Holmes, is married to Stacy Holmes.

19. Plaintiffs enjoy and frequently patronize live events at the Renee & Henry Segerstrom Concert Hall ("Concert Hall"). They always go to these events together, and due to Mr. Holmes's disability require accessible seating to enjoy the events held at the Concert Hall.

20. The Concert Hall is a facility open to the public, a place of public accommodation, and a business establishment as those terms are understood under the Americans with Disabilities Act and Unruh Civil Rights Act.

21. Plaintiffs went to the Theater on or about November 4th, 2022 to attend the Pacific Symphony presentation of the "John Williams Celebration." Symphonies are among goods, services, privileges, advantages, or accommodations ("Amenities") offered at the Concert Hall.

22. Unfortunately, on the date of Plaintiffs' visit, the Concert Hall failed to comply with ADA and California equal access obligations as they relate to patrons like the Mr. Holmes.

23. The design of the Concert Hall is multiple tiered. Relevant to this claim is the upper "orchestra terrace" section. That section has two doors, and each patron's ticket has instructions as to which of the four doors you should enter depending on your row or seat number. There are ushers at each door leading patrons to their seats based on their ticket assignment.

24. Plaintiffs acquired tickets for "Row ZZ", a row containing seats reserved for individuals with disabilities and their companions. "Row ZZ" is the only section in the theatre that affords disabled patrons a "centered" view of the stage, as all other ostensibly accessible seats are at the ends of rows. "Row ZZ" spans between Door 4 and Door 2 and has a wider walkway to accommodate wheelchairs and walking devices that is not found in the other rows. It also has moveable chairs to allow patrons to use their own wheelchair if they choose.

25. However, from the start of the symphony, and continuing into intermission, patrons and ushers used "Row ZZ" as a throughway to access the opposite part of the symphony instead of going around to the correct door for entry. This caused difficulty for the patrons sitting in the row. In Mr. Holmes case, he was stepped on by passersby twice, had his knees knocked by a passerby, his phone knocked on the floor, and while trying to stretch his leg during intermission a Concert Hall employee demanded he get out of her way so she could pass through the row. In response to protests by Mr. and Mrs. Holmes, an individual who only identified herself as "a member of the Pacific Symphony Board" shoved Ms. Holmes and demanded that she be allowed to pass through the aisle.

26. This passthrough behavior occurs because Row ZZ, despite not being designated or required to act as a circulation route, is being used as a matter of policy and practice as a circulation route.

27. As designed, this path is not wide enough to serve as a circulation route and simultaneously serve as accessible seating.

28. An image of the seating chart pulled from the Concert Hall website[1] is excerpted below, with a red arrow drawn depicting the path described above.



29. This constant passthrough behavior embarrassed, inconvenienced and humiliated the Plaintiffs.

30. They were not alone. Others in the aisle were also mistreated. An individual in a wheelchair seated next to Plaintiffs, a stroke survivor, had his wheelchair jostled. The patron to their right was kicked by patrons passing by as he could not keep his feet under his chair.[2]

31. After the symphony, Lynn Holmes spoke with the "head usher" and was assured that this would stop and they would instruct ushers not to allow individuals without tickets to pass by the area.

32. Defendants have failed to provide and/or maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

33. Plaintiffs have not been given any indication that conditions have changed and have been deterred from returning.

34. Ms. Holmes, while not disabled herself, was a companion of Mr. Holmes at the concert and suffered the same indignities. She has been deterred from patronizing events at the Concert

---

[1] Accessed at: https://www.scfta.org/Segerstrom/media/SCFTA/About%20Us/Seating%20Charts/RandH_Segerstrom_Concert_Hall.pdf

[2] This is not uncommon. Loss of full motor control, spasms, or inability to perceive limbs in space are frequent symptoms of individuals who experience spinal injuries.

Seabock / Price

Hall since she cannot be assured that her experience will not be marred by discrimination towards her and her husband. She suffered discrimination as a result of her association with a covered individual. 42 U.S.C. § 12182(b)(1)(E).

35. Plaintiffs have been deterred from returning to the symphony ever since, despite having previously been annual members of the Pacific Symphony. They typically would have gone to the December Holiday events and have been interested in multiple dates since their experience, but were unable to ensure that they wouldn't be exposed to discrimination.

36. Prior to filing this suit, plaintiff had the current implementation of the policy investigated. With nearly 90 days having passed, there was ample time to design and implement new training for the staff.

37. Unfortunately, the Plaintiffs' experience is not merely the act of rude patrons or a single rogue usher, but a policy and practice that will not be changed.

38. Numerous patrons were observed crossing through row "ZZ" rather than going through the doors marked on their tickets.

39. During investigation, the investigator inquired about how to get to her seat when going to the wrong door and she was pointed down row ZZ. Despite verifying with the usher if she should go around, she was in fact directed to walk through the aisle instead. (She declined).

40. It was not only patrons walking down the aisle, but in fact the Concert Hall staff themselves, and in one pass, an usher knocked over a patron's cane without even acknowledging it. On the return, the patron complained to him. The usher continued to pass through the aisle during the concert.

41. During intermission, this same patron was stretching her legs in row ZZ, and a different usher attempting to pass through her aisle let out an audible exasperated sigh about his route being blocked and having to go around, demonstrating his expectation in being able to utilize this aisle as a through path.

42. In all, in addition to countless patrons, at least three different members of the event staff passed through the aisle rather than going around, causing inconvenience, indignity and frustration to the patrons sitting in this row reserved for disabled patrons.

43. Segerstrom Concert Hall is located on a property that contains both the Concert Hall as well as another theatre owned or operated by the same company. That theatre has been designed in such a way to discourage patrons from passing through the reserved row, protecting against the indignities that are suffered by patrons of Row ZZ at the Concert Hall. The Segerstorm Center for the Arts knows better. This is not a necessary experience, but one that is being borne by disabled patrons without regard to the effect on them.

44. The circumstances identified above are easily corrected without much difficulty or expense. This is a policy issue that can be remedied by retraining and posting simple signs indicating that access to the row is only for individuals holding Row ZZ tickets.

45. In 2015, California implemented Cal. Code Civ. P. § 425.55(b), defining some ADA plaintiffs as "high-frequency litigants" and requiring certain disclosures by some ADA plaintiffs. Plaintiff does not meet the criteria described in this section. The claim neither implicates the types of barriers contemplated by that statute, and neither plaintiff has filed ten or more construction related accessibility claims in the preceding year.

## I. FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Title 42 United State Code §§ 12101-12189
### (On behalf of Plaintiff and against all Defendants)

46. Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

47. Under the Americans with Disabilities Act, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a). Discrimination is defined there as follows:

48. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

49. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers may be defined by failure to comply with the ADA Standards.

50. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

51. When offering accessible Amenities, a public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a). The failure to create a policy that allows patrons of Row ZZ to enjoy the Symphony without excessive foot traffic passing through their rows is a denial of full and equal access and a markedly different experience than that felt by patrons sitting in other rows.

52. Theatres, such as the Concert Hall, are required to have accessible seating. This seating should offer similar experiences, such as sight lines, as those seats that are not designated for individuals with disabilities. These spaces must be designed with sufficient space to enable use by disabled patrons, and those spaces may not overlap either accessible routes, or circulation routes. 2010 ADASAD § 802.1.3; 802.1.4; 802.1.5.

53. The design combined with the policies and practices of the Concert Hall created an unequal experience for patrons seated in Row ZZ in violation of the ADA.

54. Here, the failure to ensure that accessible facilities were available and ready to be used by the Plaintiffs is a violation of the law.

55. Violations of the ADA are not limited to just individuals with disabilities, but also those associated with protected individuals. Lynn Holmes has associational standing pursuant to 42 U.S.C. § 12182(b)(1)(E).

## II. SECOND CAUSE OF ACTION:
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### California Civil Code §§ 51-53
### (On behalf of Plaintiff and against all Defendants)

56. Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

57. The Unruh Civil Rights Act ("UCRA") guarantees, among other things, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

58. The UCRA provides that any violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

59. Defendants' acts and omissions, as herein alleged, have violated the UCRA by, among other things, denying, or aiding, or inciting the denial of, Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

60. Because the violation of the ADA resulted in a denial of full and equal access to the plaintiffs, defendants are each responsible for statutory damages related to Plaintiffs' original visit as well as deterrence since making Defendants aware of the condition.

## PRAYER

Plaintiff prays that this Court award damages and provide relief as follows:

61. For permanent injunctive relief, compelling Defendants to create a policy that requires ushers to verify the tickets of patrons of row ZZ and to prevent patrons not seated in that row from passing through. To prevent event staff from crossing the aisles except for necessary functions such as adjusting equipment behind the row. To compel installation of signage that

1 informs other patrons that the row is only for ticketholders assigned row ZZ. All of the changes
2 noted in this relief shall be completed within 30 days of the order.

62. For injunctive relief requiring implementation of accessibility policies and requiring annual employee training on providing full and equal access to clients or customers with disabilities. This shall be implemented within 90 days of judgment, or another date certain determined to be just by the court.

63. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each occasion each Plaintiff was denied full and equal access.

64. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52.

Date: February 24, 2023

**SEABOCK PRICE APC**

__/s/ Dennis Price_____

Dennis Price
Attorney for Plaintiff